

**FILED**

**February 10, 2017**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

**Time: 10:15 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jeremiah Roper | ) | Docket No. 2016-01-0546 |
| | ) | |
| v. | ) | |
| | ) | State File No. 61298-2016 |
| Allegis Group, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

---

### Affirmed and Remanded – Filed February 10, 2017

---

The employee in this interlocutory appeal suffered a severe amputation injury when his left arm became caught in a machine at work. The employer asserted that the employee's failure to properly "lock out/tag out" the machine constituted a willful failure to use a safety device and/or a willful violation of a safety rule disqualifying the employee from receiving workers' compensation benefits. After an expedited hearing, the trial court concluded that the employer had failed to meet its burden of establishing its affirmative defense and further determined that the employee was likely to prevail at trial in proving a compensable injury. Accordingly, the trial court awarded medical and temporary disability benefits, and the employer has appealed. After careful review of the record, we affirm the determination of the trial court and remand the case for further proceedings.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

David J. Deming, Nashville, Tennessee, for the employer-appellant, Allegis Group

Jeffrey W. Rufolo, Chattanooga, Tennessee, for the employee-appellee, Jeremiah Roper

### Factual and Procedural Background

The essential facts of this case are undisputed. Jeremiah Roper ("Employee") had been placed by Allegis Group ("Employer"), an employment agency, at Waupaca

1

Foundry in Etowah, Tennessee, where he worked in maintenance.[1] On August 11, 2016, Employee arrived for third shift as usual. He met with his second shift counterpart to discuss the status of the machinery and receive any information needed to begin his shift. As they were walking out of the "sand lab," Employee and his co-worker noticed a plume of black smoke on the auger deck two stories above them. Employee climbed to the auger deck to determine whether the problem was one that would require assistance to fix. Upon concluding he did not need assistance, he gave a "thumbs up" to the second shift maintenance worker to indicate he had the situation under control. He returned to the area of the auger deck to check for holes in the hoppers or the trough system. Employee testified that, while on the auger deck, he intended to complete his "daily walk-through," which consisted of an inspection of the entire auger system. As he approached the end of one line of machinery, he saw an open hatch door that should have been closed while the auger was running. Employee denied attempting to close the hatch or perform any work on the auger without "locking out/tagging out" the machine as required by Employer's safety rules. However, for reasons unknown to Employee, his left sleeve somehow snagged in the machinery and his arm was pulled into the auger, resulting in a traumatic amputation of his arm near the wrist.

Employee was transported by helicopter to UT Medical Center in Knoxville, where he underwent two surgeries to amputate additional portions of his arm. His claim for workers' compensation benefits was denied during this initial hospitalization. Unfortunately, Employee developed a severe infection that led to additional hospitalizations and surgeries to further amputate his arm just below the shoulder. Due to the infection, which remained unresolved at the time of the hearing, Employee was required to travel daily from September 19 through October 19, 2016 from his home in Decatur, Tennessee, to the hospital in Knoxville to undergo antibiotic treatment.

At the expedited hearing conducted on December 13, 2016, the nature and extent of Employee's injuries were not in dispute, nor was his current inability to work or the amount of medical expenses he had incurred. The only matter in dispute was whether Employer met its burden of establishing the affirmative defense of willful misconduct and/or willful failure to use a safety device pursuant to Tennessee Code Annotated section 50-6-110 (2016). After considering the testimony of Employee and Employer's witness and the documentation submitted by the parties, the trial court concluded that Employer had failed to come forward with sufficient evidence in support of its affirmative defense. Employer has appealed.

---

[1] In the transcript of the expedited hearing, Employer is repeatedly referred to as Aerotek. However, there is no dispute that Allegis Group is the correct employer, and the trial court concluded that Aerotek and Allegis Group were affiliated in some way.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2016). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2016).

**Analysis**

At an expedited hearing where an employee is seeking the initiation of medical and/or temporary disability benefits, he or she must come forward with sufficient evidence from which the trial court can conclude the employee "would likely prevail" at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Pertinent to this case, Tennessee Code Annotated section 50-6-110(a) excludes from coverage certain injuries arising from an employee's conduct. Among such injuries are those sustained as a result of an employee's "willful misconduct" and "willful failure or refusal to use a safety device." Tenn. Code Ann. § 50-6-110(a)(1), (4). When denying a claim on this basis, the burden of proof rests with the employer. Tenn. Code Ann. § 50-6-110(b).

The Tennessee Supreme Court addressed these defenses in *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012). In that case, the Court reviewed extensive prior precedent examining the affirmative defenses of willful misconduct, willful failure or refusal to use a safety device, and willful violation of a safety rule, and compared the various tests used by Tennessee courts to the analysis espoused by Professor Larson in his treatise on workers' compensation law. The Court concluded that, "[b]ecause *Larson's* four-step test establishes straightforward guidelines for evaluating claims of willful misconduct and willful failure or refusal to use a safety appliance, we choose to adopt this standard for this and future cases involving these

3

statutory defenses." *Id.* at 453.[2] Thus, to prevail on one of these affirmative defenses, an employer has the burden of establishing four elements: (1) "the employee's actual, as opposed to constructive, notice of the rule"; (2) "the employee's understanding of the danger involved in violating the rule"; (3) "the employer's bona fide enforcement of the rule"; and (4) "the employee's lack of a valid excuse for violating the rule." *Id.* Further, it is axiomatic that to succeed with this defense, the employer must also establish that there was, in fact, a violation of a safety rule. *See Neal v. Connect Express, LLC*, No. 2016-06-1872, 2017 TN Wrk. Comp. App. Bd. LEXIS 9, at *10 (Tenn. Workers' Comp. App. Bd. Jan. 30, 2017) ("[I]t stands to reason that the existence of a violation must occur to successfully invoke this defense.").

In analyzing the four factors set out in *Mitchell*, the trial court in the present case concluded that Employer did not prove Employee willfully violated a safety rule or engaged in willful misconduct. We agree and, thus, any further analysis of the four factors is unnecessary at this stage of the litigation.

It is undisputed that Employee saw a plume of smoke on the auger deck and went to investigate. It is also undisputed that, in order to repair the problem, he would be required to "lock out/tag out" the machine so it would be "de-energized" while he was working on it. However, at the time his arm became caught in the machine, Employee was *not* working on the machine or attempting to repair it, but was simply trying to pass by it in a cramped environment on his way back to the "sand lab."[3] Although Employer pointed to what it believed were inconsistencies between Employee's testimony at the expedited hearing and unsworn statements made to Employer's representative during a recorded statement, the trial court resolved such issues in Employee's favor and found him to be a credible witness. Such determinations are entitled to significant deference on appeal, *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008), and we find nothing in the record mandating a contrary result on this issue.

Moreover, the trial court concluded Employer's rules contemplated that authorized maintenance personnel would perform troubleshooting activities while the machines were still energized. In support of this finding, the trial court cited paragraph 8.1.1 of

---

[2] Early in its opinion in *Mitchell*, the Supreme Court noted the then-current statutory mandate to construe the Workers' Compensation Law in a "liberal manner." However, in ultimately adopting the *Larson* test, the *Mitchell* Court did not reference the liberal interpretation mandate and did not precondition its application of the test on a liberal or remedial interpretation of the statute. We conclude that the *Larson* test as adopted in *Mitchell* can be applied in the context of the current statutory mandate to apply the law "fairly, impartially, and in accordance with basic principles of statutory construction." *See* Tenn. Code Ann. § 50-6-116 (2016).

[3] Employee estimated that the catwalk was eighteen to twenty-four inches wide between the machine and the handrail. He further testified that "it's a tight fit down around the end of it." Employer's witness agreed, stating, "I could see that that would be maybe 18 to 24 inches of space on either side of that portion of the catwalk."

Waupaca's "Energy Control and Lockout Compliance Work Instruction" handbook, which stated, "[w]hen conducting troubleshooting activity where energy sources must remain on to perform the task, extreme care shall be exercised to avoid placing the body into a hazardous zone." In addition, Employer's witness testified as follows:

> Q: Is it your understanding that when walking the catwalks, you're supposed to de-energize or lock out or tag out the machinery?
>
> A: If you're going to service it, yes.
>
> Q: If you're going to service it, if you're going to work on it.
>
> A: Sure.
>
> Q: Okay. But if you're not working on it, you don't have to de-energize it.
>
> A: Correct.

There is ample support in the record that Employee was not attempting to service or work on the machine at the time of the accident. His uncontradicted testimony was that he was observing the machine to determine what the problem was and what tools would be needed to repair it, if any, before he left the auger deck to return to the "sand lab." There is no evidence that Employee opened the auger hatch or willfully violated a safety rule while attempting to pass by the open hatch. In short, Employer failed to come forward with sufficient evidence at the expedited hearing in support of its affirmative defense.

Finally, we note two arguments in Employer's brief that merit further discussion. First, Employer argues that Employee's description of his movements while on the auger deck indicated he was "repeatedly walking around the open door on the auger again and again . . . repeatedly violating the prohibition he agreed to be bound to on following lock out-tag out procedures with an open door or panel." Other than acknowledging that he saw the open hatch door just before his injury, we find nothing in the testimony supporting Employer's argument that he knowingly walked by the open hatch door "again and again." And, even if he did walk by the open hatch door more than once prior to the accident, there is no evidence that he attempted to service the machine, that he attempted to close the hatch door, or that he engaged in any activity other than visually inspecting the machine to determine the proper course of action to perform any necessary repairs.[4]

---

[4] Employer also argues that paragraph 2.11 of Employer's safety rules require employees to de-energize the machines even when "inspecting" them. However, the interpretation of the word "inspecting" as

5

Second, Employer insists that the Supreme Court's holding in *Mitchell* established that an "employee's lack of a valid excuse to follow a safety rule constitutes willfulness." This is an overbroad interpretation of *Mitchell* that, if accepted, would allow employers to deny benefits to employees whose merely negligent or reckless actions resulted in a violation of a known safety rule. On the contrary, the *Mitchell* Court stated just the opposite. In evaluating Mr. Mitchell's violation of the pertinent safety rule in that case, the Supreme Court concluded, "his acknowledgment that he *elected* to take off [the protective gloves] anyway clearly established that his act was *willful* – and not merely negligent or reckless." *Mitchell*, 368 S.W.3d. at 455 (emphasis added). Thus, the Supreme Court in *Mitchell* reinforced longstanding precedent that an employee's negligent or reckless actions generally are not enough to defeat a claim for workers' compensation benefits. In seeking to establish the fourth element of the *Mitchell* test, an employer must come forward with evidence that the employee *intended* to take the action that violated the known safety rule without a valid excuse. The *Mitchell* Court's adoption of this portion of the *Larson* test eliminated the requirement that an employer show some element of "perverseness" in the injured worker's actions, but it did not do away with the requirement that an employer show the injured worker's actions in violating the known safety rule were willful. In the present case, there is simply insufficient evidence at this stage that Employee intended to come too close to the open hatch as he maneuvered past the end of the machinery on a narrow catwalk.

In sum, the preponderance of the evidence supports the trial court's conclusion that Employee did not willfully violate any known safety rules in his visual examination of the machine or his attempt to maneuver past the open hatch. Moreover, the evidence presented to date supports the trial court's conclusion that Employee is likely to prevail at trial in proving a compensable injury.

**Conclusion**

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

---

espoused by Employer would require lock out/tag out procedures any time the machines were being observed by employees. This safety rule, which is entitled "Servicing and/or Maintenance," can also be interpreted to require lock out/tag out procedures when "inspecting" the machine *during* servicing or maintenance of the machine.

**FILED**

**February 10, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:15 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jeremiah Roper | ) | Docket No.    2016-01-0546 |
| | ) | |
| v. | ) | State File No.  61298-2016 |
| | ) | |
| Allegis Group, et al. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 10th day of February, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Jeffrey W. Rufolo | | | | | X | jrufolo@summersfirm.com<br>jahollis@summersfirm.com |
| David J. Deming | | | | | X | ddeming@manierherod.com<br>tjoiner@manierherod.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov